[Cite as *State v. Light*, 2025-Ohio-4628.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ERIC BENJAMIN LIGHT,

    DEFENDANT-APPELLANT.

CASE NO. 14-25-08

OPINION AND
JUDGMENT ENTRY

Appeal from Union County Common Pleas Court
Trial Court No. 2024-CR-0098

Judgment Affirmed

Date of Decision: October 6, 2025

APPEARANCES:

    *Alison Boggs* for Appellant

    *Raymond Kelly Hamilton* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Eric B. Light ("Light"), brings this appeal from the January 30, 2025, judgment of the Union County Common Pleas Court. On appeal, Light argues that the trial court erred by denying his presentence motion to withdraw his guilty plea, and that he received ineffective assistance of counsel. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On May 17, 2024, Light was indicted for Strangulation in violation of R.C. 2903.18(B)(2), a third degree felony, Felonious Assault in violation of R.C. 2903.11(A)(1), a second degree felony, Domestic Violence in violation of R.C. 2919.25(A), a first degree misdemeanor, and Aggravated Menacing in violation of R.C. 2903.21(A), a first degree misdemeanor. It was alleged that Light had an altercation with his girlfriend wherein Light strangled and struck his girlfriend, leaving her visibly bruised. Further, it was alleged that during the altercation Light's girlfriend suffered a fractured bone in her hand. Law enforcement was called by the victim's father while Light was not present. Officers who responded observed injuries on Light's girlfriend and she was taken to the hospital for evaluation. Light originally pled not guilty to the charges.

{¶3} After multiple pretrial hearings, a jury trial was set for December 2-4, 2024. However, on November 26, 2024, the parties entered into a written negotiated plea agreement wherein Light agreed to plead guilty to a reduced, amended charge of Strangulation in violation of R.C. 2903.18(B)(3), a fifth degree felony. In exchange, the State agreed to dismiss the remaining charges.

{¶4} The trial court held a Crim.R. 11 change-of-plea hearing and determined that Light was entering a knowing, intelligent, and voluntary plea. Light's plea was accepted, a pre-sentence investigation was ordered, and sentencing was set for January 16, 2025.

{¶5} When the matter convened for the scheduled sentencing hearing, Light's attorney indicated he had just been informed by Light that Light wanted to withdraw his guilty plea. Light's attorney stated that Light's request caught him "off guard" and he was not prepared to argue a motion to withdraw Light's plea that day. The trial court indicated it would set a hearing date on the motion to withdraw, and, in the meantime, Light could file a written motion to withdraw his plea.

{¶6} On January 28, 2025, Light filed a written motion to withdraw his plea. He argued that presentence motion to withdraw pleas should be "freely and liberally granted," and that the State would experience minimal prejudice due to the withdrawal. He also contended that on the date of the plea hearing he expressed some reservations when the State recited a factual basis for the charges.

{¶7} In addition, Light contended that in the pre-sentence investigation he maintained his innocence. Further, he argued that the alleged victim had been inconsistent and reluctant to appear or cooperate in the prosecution. In fact, he argued that, "The State is in possession of a written recantation of the allegations by the alleged 'victim.'" (Doc. No. 45). Light also argued, for apparently the first time, that he had an alibi, claiming that he "was at work for 3 hours already when this allegedly happened." (*Id.*)

{¶8} The State filed a response contending that Light was simply having a "change of heart," which was not a sufficient basis to withdraw a plea. The State referenced the change-of-plea hearing wherein Light indicated he fully understood what he was doing. Further, the State argued that it would be prejudiced by Light's withdrawal, particularly because Light had been speaking to the victim.

{¶9} On January 30, 2025, the trial court held a hearing on Light's motion to withdraw his guilty plea. Light's counsel orally argued in favor of the motion to withdraw, contending that Light had maintained his factual innocence. In addition, Light's counsel argued that the alleged victim had been arrested on drug charges making it easier for the State to secure her testimony at trial, thus there could be little prejudice to the State.

{¶10} The State argued that Light had six months to assert an alibi prior to his plea or scheduled trial date and he was only just raising the issue. The State also

presented a short segment of a phone call between Light and the alleged victim from October 6, 2024, wherein Light was attempting to get money and the alleged victim stated she was "trying to avoid the court for a reason." (Jan. 30, 2025, Tr. at 10). Light responded that he was aware the victim was trying to avoid court. The State argued that Light was tampering with the alleged victim and that the alleged victim was afraid of Light as shown on police body camera footage from the date of the alleged incident.

{¶11} Following the arguments of the parties, the trial court conducted a lengthy analysis on the record and ultimately overruled Light's motion to withdraw his plea. The trial court then proceeded to sentencing and reviewed Light's criminal history, which included multiple prior felonies. After reviewing the sentencing factors, the trial court sentenced Light to five years of community control.

{¶12} The trial court filed a final judgment entry denying Light's motion to withdraw and sentencing him to community control on January 30, 2025. It is from this judgment that Light appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court erred when it overruled Appellant's motion to withdraw his plea before he was sentenced.**

**Second Assignment of Error**

**Appellant was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

*First Assignment of Error*

{¶13} In his first assignment of error, Light argues that the trial court abused its discretion by denying his presentence motion to withdraw his guilty plea.

Standard of Review

{¶14} Criminal Rule 32.1 governs the withdrawal of guilty pleas and it reads, "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶15} The Supreme Court of Ohio has emphasized that " '[a] presentence motion to withdraw a guilty plea should be freely and liberally granted.' " *State v. Barnes*, 2022-Ohio-4486, ¶ 13, quoting *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). However, the Supreme Court of Ohio continued by indicating that a defendant does not have an "absolute right" to withdraw his plea, even when the motion to withdraw is made prior to sentencing. *Id*. citing *Id*.

The Supreme Court of Ohio held in *Barnes* that:

Before ruling on a defendant's presentence motion to withdraw his plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea. [*Xie* at 527]. The determination whether there is a reasonable and legitimate basis for the defendant's request to withdraw his plea is 'within the sound discretion of the trial court.'

*Barnes* at ¶ 13, quoting *Xie* at paragraph two of the syllabus.

{¶16} Because the determination of whether a defendant's basis is reasonable and legitimate is within a trial court's sound discretion, a trial court's ruling on a motion to withdraw a guilty plea will not be reversed in the absence of an abuse of discretion. *Id.* An abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious. *State v. Wallace*, 2023-Ohio-3014, ¶ 28 (3d Dist.)

Legal Analysis

{¶17} In reviewing a trial court's decision on a motion to withdraw a guilty plea, appellate courts have historically relied on a list of considerations that have included the following nine-factor analysis:

(1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8)

whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges.

*State v. Bingham*, 2019-Ohio-3324, ¶ 42 (3d Dist.).

**{¶18}** However, in *Barnes*, a divided opinion from the Supreme Court of Ohio with four votes in the majority and three in the dissent, the majority did not apply the nine-factor analysis typically applied by appellate courts in cases involving a motion to withdraw a guilty plea. In *Barnes*, the defendant and two other people exchanged gunfire in an altercation that killed one bystander and injured two others. *Barnes, supra*, at ¶ 3-4. After pleading guilty to the resulting charges, the defendant asserted that he became aware of video footage that recorded the altercation. *Id.* He moved to withdraw his guilty plea as he believed this footage could establish that he had acted in self-defense. *Id.* The trial court denied his motion to withdraw his guilty plea. *Id.*

**{¶19}** After the Eighth District affirmed the trial court's decision, the Supreme Court of Ohio accepted the case to consider the following proposition of law:

A defendant has a reasonable and legitimate basis to withdraw a guilty plea before sentencing, upon learning of evidence that: (1) was previously withheld from the defendant; and (2) would have changed the defendant's decision to plead guilty.

*Barnes, supra,* at ¶ 12. In resolving this question, the Supreme Court of Ohio concluded that, **"**when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." (Emphasis added.) *Id.* at ¶ 24. Moreover, the majority indicated that under *State v. Xie*, *supra*, when a defendant "wants to withdraw [his] plea before he has been sentenced, the trial court should permit him to withdraw his plea. This is the presumption from which all other considerations must start." *Barnes* at ¶ 21. Based on the record, the majority concluded that the State had not overcome the "presumption that Barnes's motion to withdraw his guilty plea must be freely and liberally granted." *Id*. at ¶ 23.

{¶20} Since *Barnes* was decided, many Ohio appellate courts have noted that the Supreme Court of Ohio did not entirely reject the nine-factor analysis that appellate courts have typically applied in evaluating motions to withdraw guilty pleas.[1] *State v. Wroten*, 2023-Ohio-966, ¶ 31 (2d Dist.); *Wallace*, 2023-Ohio-3014, ¶ 29 (3d Dist.); *State v. Gutierrez*, 2025-Ohio-1884, ¶ 45 (4th Dist.); *State v. Kohler*, 2023-Ohio-1772, ¶ 14 (5th Dist.); *State v. Grier*, 2023-Ohio-207, ¶ 26 (6th Dist.); *State v. Figueroa*, 2025-Ohio-1997, ¶ 33 (7th Dist.); *State v. Johnson*, 2023-Ohio-371, ¶ 43 (8th Dist.); *State v. Hogan*, 2025-Ohio-2241, ¶ 15 (10th Dist.); *State v.*

---

[1] In a separate concurrence, one justice, and one judge sitting by assignment, indicated that they would "discard the nine-factor analysis," but there were only two votes for this position. *Barnes* at ¶ 28.

*Facemire*, 2025-Ohio-1500, ¶ 17 (11th Dist.); *State v. McWhorter*, 2024-Ohio-5753, ¶ 12 (12th Dist.). Rather, the *Barnes* majority held that these "factors do not apply *here*." (Emphasis added). *Barnes, supra*, at ¶ 24. For this reason, a number of our sister districts have held that the nine-factor analysis continues to apply outside of cases that are factually similar to *Barnes*. *Wroten*; *Wallace*; *Gutierrez*; *Kohler*; *Grier*; *Figueroa*; *Johnson*; *Hogan*; *Facemire*; *McWhorter*. However, it is important to emphasize that consideration of the nine factors is a balancing test, and no one factor is dispositive. *Hogan* at ¶ 16.

**{¶21}** First, we must determine if this case is similar to *Barnes* such that its holding should apply here regardless of any nine-factor analysis. Under *Barnes*, if Light learned of new evidence that was withheld from him, and that evidence would have impacted his decision to plead guilty, then reversal would be appropriate here.

**{¶22}** In this case, Light's claim to "new evidence" consists of the following language in his written motion to withdraw his plea:

> [T]he alleged "victim" has been inconsistent, reluctant to appear or cooperate in the prosecution and submitted a full recantation of the allegations. As noted below he submitted a potential alibi (dependent on specific times and evidence).
>
> . . .
>
> Pertinent to the Instant case, it is asserted the physical evidence is inconsistent with the specific allegations of assaultive conduct. The State is in possession of a written recantation of the allegations by the alleged "victim". Accordingly, the Defendant has maintained innocence up to and during the previously scheduled plea hearing and

> *even before the sentencing hearing, the Court was aware of the*
> *presence report, wherein the Defendant stated,* "I didn't commit
> any crime as alleged" *and* "I was at work for 3 hours already when
> this allegedly happened."

(All emphasis sic.) (Doc. No. 45).

{¶23} Light's claim to an alibi that he had not asserted before would not constitute "new" evidence; however, arguably a recantation from the victim could be considered new evidence under *Barnes if* he was unaware of it prior to pleading guilty *and* the State did not provide Light with this information. The principal problem with Light's argument on appeal is that *we have no further information in the record regarding this alleged recantation*. We do not know for certain that the purported recantation exists because it is not in the record. We do not know whether Light was informed of any recantation by the State if it exists, or if any purported recantation occurred before or after Light entered his guilty plea.

{¶24} Light's counsel did not mention the purported recantation at the hearing on the motion to withdraw. Instead he orally argued that Light had maintained his innocence and struggled with the plea agreement during the plea hearing. He also argued there was little prejudice to the prosecution. Without any actual documentation that the purported recantation exists, that Light was previously unaware of it, *and* that it would have impacted his plea, we do not find that this case is similar to *Barnes*. Thus inasmuch as Light relies on *Barnes* to support reversal here, his argument is not well-taken.

{¶25} As *Barnes* does not compel reversal here, we will address the traditional factors that Ohio Appellate Courts have considered when evaluating whether a trial court abused its discretion by denying a presentence motion to withdraw a guilty plea. We will review the factors in turn.

{¶26} The first factor is whether the withdrawal will prejudice the prosecution. Light argues that withdrawal will not prejudice the prosecution because the alleged victim was incarcerated and facing a potential lengthy prison sentence, thus she should be accessible to the State.

{¶27} The State counters by contending that the alleged victim had been uncooperative throughout the proceedings despite the documented evidence such as the police body camera footage and the hospital records, and she was already likely to be called as a court's witness. The State argues that Light had maintained contact with the alleged victim, including in the phone call wherein the alleged victim indicated she was trying to avoid court for "reasons." The State argues that Light had effectively been tampering with the alleged victim and as more time passed that was only getting worse. Based on the State's arguments, the trial court could properly find that there was some prejudice to the State.

{¶28} The next factor concerns Light's representation and whether his counsel was competent. Light argues on appeal that there were deficiencies with his counsel at the change-of-plea hearing, but that is not reflected in the record. Defense

counsel negotiated a deal wherein Light would have one fifth-degree felony conviction instead of facing a second degree felony and another third degree felony. At the change-of-plea hearing, Light indicated he was perfectly satisfied with his counsel when he was asked. In fact, there were multiple moments in the hearing where Light spoke to his attorney and he continued to express that he was satisfied with his counsel.

{¶29} Light now contends that his attorney was less than competent because he did not investigate Light's alibi. However, Light's "alibi" seems to be based on his claim that an altercation occurred between himself and the victim, then he left for work. He *believed* that when he left for work, her injuries were not as bad as they were later when the victim went to the hospital. (Jan. 30, 2025, Tr. at 23). Light claims that he was thus, perhaps, at work when the injuries occurred, depending on when they occurred. Given the specious nature of Light's argument, we do not find his counsel was less than competent for failing to raise this "alibi" issue earlier, particularly when Light maintained adamantly at the change-of-plea hearing that he was satisfied with his attorney's representation. By all accounts, the record supports a finding that Light received representation from highly competent defense counsel.

{¶30} Next, we consider the extent of the plea hearing pursuant to Crim.R. 11, and the related factor of whether Light understood the nature of the charges and potential sentences. A review of the change-of-plea hearing establishes that the trial

court thoroughly covered all of the constitutional and non-constitutional advisements at the plea hearing. Light indicated that he understood the rights he was waving and he indicated he understood the maximum possible penalties.

{¶31} The only time that Light seemed to express any notable reservations at the plea hearing was after the trial court had the prosecutor recite a "statement of facts" for the record. After the prosecutor recited the "facts," the following exchange occurred:

THE COURT: Mr. Light, you've heard the statement of facts as read by the Prosecuting Attorney. Do you agree with the statement of facts?

[DEFENSE COUNSEL]: (INAUDIBLE PRIVATE DISCUSSION WAS HELD BETWEEN THE DEFENDANT AND ATTORNEY SPALL AT THE COUNSEL TABLE.) Then answer the Judge's question.

DEFENDANT: Yes, your honor.

THE COURT: Do you agree that within the statement of facts, that the statement of facts includes the allegation that you committed the offense of strangulation? And therefore, as a result of agreeing to the statement of facts, do you agree that you committed the act of strangulation as set forth as a felony of the fourth – fifth degree?

DEFENDANT: Yes.

THE COURT: I'm trying to – I'm trying to make it easy on you because the next question was going to be after you agree to the statement of facts, do you agree that you committed the acts as alleged in the statement of facts? And if you don't want to agree to all of them, that's okay. But you're – you are, by pleading guilty to strangulation, you're agreeing that you committed the offense of strangulation as stated within the statement of facts. You with me?

DEFENDANT: I understand it.

THE COURT: Do you agree with that or not?

[DEFENSE COUNSEL]: (INAUDIBLE PRIVATE DISCUSSION HELD BETWEEN THE DEFENDANT AND ATTORNEY SPALL AT THE COUNSEL TABLE.) Your Honor, could we have a brief recess? Mr. Light, I think, has some questions for me and concerns about –

THE COURT: I'm happy to give you all the recess that you want. But if we don't get this over with, we're going to trial on Monday. We'll pause the record.

. . .

[A recess was taken from 3:56 p.m. to 4:14 p.m.]

. . .

[DEFENSE COUNSEL]: After some discussion with Mr. Light, he is prepared to go forward with the plea. Although he did take issue with some of the facts recited by the State, he is prepared to stipulate to facts sufficient to find him guilty of the strangulation offense for which he's pleading guilty today. I think he just took some issue and it can be addressed at sentencing with some of the issues raised by the – or recited by the State in terms of specifics and the allegations, basically, drawn directly from a police report. And I think he'll be prepared to address some of the more specific events or discrepancies in both the PSI, should the court order one, and at the sentencing hearing, your Honor. But with that, he is prepared to enter the plea and continue.

THE COURT: Mr. Light, you've heard your attorney's statement, do you so stipulate?

DEFENDANT: Yes.

THE COURT: Then to count one, the offense of strangulation, a felony of the fifth degree, how do you plead?

DEFENDANT: Guilty.

(Tr. at 20-23).

{¶32} Other than the preceding segment, Light was unequivocal in his responses to the trial court, repeatedly answering that he understood the rights he was waving and the penalties he was facing. The preceding segment shows only that Light did not necessarily agree to the entire statement of facts read by the prosecutor, which included statements regarding significant bruising to the victim separate from the strangulation and a hand fracture.

{¶33} Simply put, a full review of the plea hearing establishes that Light expressed at the time of the hearing he was entering a knowing, intelligent, and voluntary plea, and that he was fully aware of the charges and potential sentences.

{¶34} The next factors we consider are interrelated: the extent of the hearing on the motion to withdraw the plea, the trial court's consideration of the motion, and the timing of the motion. As for the timing of the motion, it was technically a presentence motion to withdraw a guilty plea; however, it was made orally on the date of sentencing even though sentencing was over a month after the change-of-plea hearing. Nevertheless, Light is still entitled to review under a presentence standard, which weighs in his favor.

{¶35} When Light made his oral motion to withdraw his plea at sentencing, the trial court set the matter for a hearing so that defense counsel could file a written motion in the meantime, and then could present any desired evidence at the hearing. The trial court held a hearing on the motion and did not limit any presentation of evidence or argument from the parties. Thus a full hearing was held.

{¶36} Furthermore, by all accounts the trial court gave "full and fair consideration" to the motion. The trial court thoroughly reviewed the change-of-plea hearing, noting Light's repeated acknowledgement of the rights he was waving. At the very least, there is nothing to suggest that the trial court gave anything less than full and fair consideration to the motion.

{¶37} Finally, we consider the stated reasons for the motion to withdraw, and whether the accused was not guilty or had a complete defense. As for the stated reasons of the motion, we have already discussed that Light did not present any actual evidence of the victim recanting. Similarly, his claim to an alibi is spurious at best. His sole claim to complete innocence is in the PSI wherein he claimed he did not commit any crime. This is contradicted by defense counsel's statement at sentencing that Light took issue with what he saw in the photographs—"he doesn't believe [the injuries] were the result of that earlier altercation." (Jan. 30, 2025, Tr. at 23). Light's contention thus seems to revolve around the severity of the injuries, even though he was not pleading guilty to the Felonious Assault charge.

**{¶38}** After reviewing all of the factors, we do not find that the trial court abused its discretion by denying Light's motion to withdraw his guilty plea. Numerous factors weighed against him and Light presented no actual evidence to support his claims. *State v. Estrep*, 2024-Ohio-58, ¶ 42-43 (4th Dist.) (holding that a change of heart or buyer's remorse do not constitute a legitimate basis to grant a pre-sentence motion to withdraw a plea, while noting that it is not unusual for a defendant to have some degree of "cold feet" when confronted with the penalties that may be imposed that day).  Therefore, his first assignment of error is overruled.

*Second Assignment of Error*

**{¶39}** In his second assignment of error, Light argues that his attorney was ineffective for multiple reasons.

Standard of Review

**{¶40}** We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. "A plea of guilty waives  any  claim  that  the  accused  was  prejudiced

by ineffective assistance of trial counsel, except to the extent that the ineffectiveness alleged may have caused the guilty plea to be less than knowing, intelligent, and voluntary." *State v. Stivender*, 2011-Ohio-247, ¶ 15 (2d. Dist.).

Analysis

**{¶41}** Light first argues that his attorney was ineffective for failing to "attach copies of the writings wherein the victim recanted" to the motion to withdraw the plea. As stated previously, we have no evidence in the record that this document exists. *State v. King*, 2024-Ohio-4705, ¶ 7 (2d Dist.) ("[T]he record does not reveal what discovery defense counsel shared with Jordan or what counsel told him regarding a guilty plea ... Because these arguments rely on information outside the record, they are not cognizable on direct appeal."). Thus, this argument is not well-taken.

**{¶42}** Next, Light argues that trial counsel was ineffective for failing to object to playing "a snippet of a phone conversation" between Light and the victim at the hearing on the motion to withdraw. Light's argument ignores the fact that his counsel argued strongly against the phone conversation being admissible as evidence. He also does not establish how the conversation was inadmissible at the hearing on his motion to withdraw his plea.

**{¶43}** Finally, Light argues that his trial counsel was ineffective for failing to more properly establish his "alibi" defense, but no notice of alibi has been filed

and there is no indication that Light actually had an alibi. Light's unsupported accusations do not constitute ineffective assistance of counsel.

{¶44} After reviewing the record, we find that Light has not demonstrated ineffective counsel such that it rendered his plea anything less than knowing, intelligent, and voluntary. Therefore, his second assignment of error is overruled.

*Conclusion*

{¶45} Having found no error prejudicial to Light in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Union County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

Case No. 14-25-08

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Juergen A. Waldick, Judge

William R. Zimmerman, Judge

John R. Willamowski, Judge

DATED:
/jlm